ALBERT A. CONANT *vs.* GRAND TRUNK RAILWAY COMPANY.

Oxford.   Opinion October 9, 1915.

*Bailee.   Collision.        Contributory Negligence.        Damages.*
*Flagman.      Negligent.       Warning Signal.*

Action on the case to recover damages to a Ford automobile resulting from a collision between it and the defendant's train, on September 27, 1912, at about five o'clock in the afternoon, at Hicks Crossing, in the town of Norway. The case comes up on report of the evidence.

*Held:*

1. The evidence shows that the required signals by whistle and the ringing of the bell were given by the train as it approached the crossing.

2. Where no request has ever been made of a railroad corporation under Revised Statutes, Chapter 51, Section 71, to maintain a flagman, or gates or automatic signals at a railroad crossing, the railroad company is not to be held negligent, as a matter of law, in not maintaining such.

3. Whether this crossing is "near the compact part of a town" within the meaning of Revised Statutes, Chapter 52, Section 86, may not be free from doubt. But if it be assumed that the statute applies in this case, and,

therefore, that the speed of the train exceeded the rate specified in the statute, that fact does not conclusively show that the defendant was negligent in so running its train under the circumstances.

4.  There is no sufficient evidence in the case that would warrant a finding that the defendant was negligent in fact in the management or speed of its train at the time and place of the accident, under all the circumstances disclosed.

5.  The plaintiff, having failed to prove any negligence on the part of the defendant, is not entitled to recover; an l, therefore, it becomes immaterial whether or not his car, at the time of the accident, was in the control of the driver as bailee.

On report.  Judgment for defendant.

This is an action on the case brought by Albert A. Conant to recover for the value of a Ford automobile alleged to have been damaged by the negligence of defendant in a collision on the 27th day of September, 1912, at Hicks Crossing, in Norway.  Plea, the general issue.  At the conclusion of the evidence, by agreement of parties, the case was reported to the Law Court for determination, upon so much of the evidence as is legally admissible.

The case is stated in the opinion.

*Fred R. Dyer* for plaintiff.

*Clarence Hight, H. P. Sweetser and James S. Wright,* for defendant.

SITTING:  SAVAGE, C. J. SPEAR, KING, BIRD, HALEY, HANSON, JJ.

KING, J.  Action on the case to recover damages to a Ford automobile resulting from a collision between it and the defendant's train, on September 27, 1912, at Hicks Crossing, so called, in the town of Norway.  The case comes up on a report of the evidence, "the court to determine the question of liability of defendant," the parties having agreed on the amount of damages to be assessed in case the defendant is found to be liable.

In considering and weighing the evidence, therefore, the court is acting with full jury powers.

We think the evidence clearly shows the following:  The plaintiff, living in Hebron, directed his son, Forest B. Conant, sixteen years of age and who had been driving the automobile about three months, to take the car to Smith's garage at South Paris in order

that some trouble with the engine causing "skipping" might be remedied. Young Conant took with him William E. Walker, a fellow-student at Hebron Academy, and also invited two young ladies to go with them. They left Hebron about four o'clock in the afternoon and drove directly to the garage in South Paris, the distance from Hebron being about six miles. Young Conant, leaving the car outside the garage, went in and saw Smith who came out to the car and said he would need to drive it to best determine the trouble, whereupon Conant told him to go ahead and cranked the car for him. Smith got in behind the wheel, with Conant beside him, and drove the car along Pleasant street towards Norway. Walker and the two girls were on the back seat.

From the defendant's depot at South Paris a short branch line track runs from the main line to Norway a distance of about a mile and a half. Pleasant street, leaving South Paris and going towards Norway, runs quite near and generally parallel with the Norway branch track. For the distance of about half a mile from the depot in South Paris the branch track is on the left-hand side of Pleasant street going towards Norway. It then crosses the street obliquely, and at grade, called Hicks Crossing, and continues to Norway on the right hand side of the street. The trains over the branch are light and few in number, being drawn by an engine equipped to run forward or backward, having a head-light, pilot and cow-catcher on the end of the tender the same as on the front of the engine. It is admitted that the situation at the crossing at the time of the accident was substantially as shown in two photographs introduced. They were taken from points in Pleasant street, one 91 feet, and the other 133.6 feet from the crossing towards South Paris. Those pictures disclose that from the points in the street where they were taken a train coming from Norway could be seen when it was some little distance back from the crossing. Pleasant street appears to be straight and to have little or no grade for some distance on either side of the crossing, and, generally speaking, the land through which the branch track is located towards Norway of the crossing seems to be comparatively level.

As the automobile came along Pleasant street from South Paris towards this crossing a train, consisting of the engine and tender drawing an empty coal car and a loaded box car, was approaching the

crossing from Norway at a speed of from ten to fifteen miles an hour. The engine was at the head of the train towards South Paris and running the tender first. The automobile came along the street to the crossing at the rate of about twenty miles an hour and struck the side of the tender on the crossing, causing the damages complained of. Neither Smith who was driving the car, nor Conant who sat beside him, nor either of the others in the car, gave any care or attention whatever to the fact that they were driving upon a railroad crossing. Mr. Smith, who was killed in the collision, was holding his head down and apparently looking down and listening to the engine of the automobile. Young Conant was turned towards the other young people on the back seat, and they with him were joking and "kidding" those in an old Reo car behind them which they had outspeeded. The evidence will justify no other conclusion than that there was gross carelessness in the management of the automobile as it approached the crossing, and that all the people in the car were negligent.

But it is the contention of the plaintiff, and he bases thereon his right to recover, that Smith, the driver of the car at the time of the accident, had so far taken the car into his possession to repair it that he had become the plaintiff's bailee of it, and, therefore, that Smith's negligence is not imputable to him, being a bailor, so as to debar him from recovering for any injury to the property bailed caused by the defendant's negligence, although the negligence of Smith contributed thereto.

But we do not find it necessary to decide whether the car at the time of the accident was in the control of Smith as a bailee of the plaintiff, or still in the control of young Conant as the plaintiff's agent, for we are of the opinion that the plaintiff's case fails in limine, in that there is no sufficient evidence of any negligence of the defendant which is accountable for this collision.

The plaintiff alleges in his writ in substance and effect that the defendant was negligent in the following particulars: that it did not give the required warning signals of the approach of the train by whistle and ringing of the bell; that it did not provide a flagman or gates or some automatic signal to warn persons of the approaching train; and that it operated its train over this crossing, which is alleged to be near the compact part of a town, at a rate of speed

greatly in excess of that allowed by law, and with the engine running backward.

We cannot here take space to give an analysis of the evidence showing in extenso wherein it fails to sustain the plaintiff's allegations and contentions that the defendant was negligent in the operation of its train and thereby caused the collision. It would be profitless to do so. We will therefore briefly state the conclusions we have reached after a study of the evidence in the light of the arguments urged on the one side and the other.

1.   The evidence abundantly shows that the required signals by whistle and the ringing of the bell were given as the train approached the crossing.

2.   It is admitted in the case that no request has ever been made to the defendant by town authorities, or by any public commission of the State, for the establishment of a flagman, or gates, or automatic signals at this crossing. It cannot, therefore, be held as a matter of law that the defendant was negligent in not providing such at the crossing. *Sykes* v. *Maine Central Railroad Co.,* 111 Maine, 182, 183. Was the defendant negligent in fact in not providing a flagman, or gates or automatic signals at this crossing? We think not. An examination of the situation at this crossing as disclosed in the photographs shows that the traveler when at a safe distance from it can see a train approaching it from Norway at a considerable distance back from the crossing, and, further, that there are no deep cuts or embankments, or high blocks of buildings to prevent a traveler hearing the warning signals and the noise of an approaching train. The evidence plainly shows that this crossing is not one where a train may suddenly come upon a traveler unawares from behind some obstruction. On the other hand, a train approaching the crossing is in plain view for a sufficient distance to enable any reasonably prudent person in the exercise of due care to avoid a collision with it. In view therefore of the situation at the crossing as disclosed, and the limited amount and kind of train service over it, the court is clearly of the opinion that the defendant should not be held negligent in fact because it did not maintain there a flagman, or gates, or automatic signals.

3.   The train approached the crossing at a rate of speed not exceeding fifteen miles an hour, indeed practically all of the wit-

nesses estimated its speed at from ten to fifteen miles an hour. But the plaintiff contends that notwithstanding the low rate of speed of the train the defendant was negligent because it violated the provision of section 86 of chapter 52, Revised Statutes, which reads: "No engine or train shall run across a highway near the compact part of a town at a speed greater than six miles an hour, unless the parties operating the railroad maintain a flagman, or a gate, or automatic signals ordered or approved by the railroad commissioners, at the crossing of such highway."

Whether this crossing is "near the compact part of a town" within the meaning of the statute may not be free from doubt. But if it be assumed that the statute applies to this crossing, and, therefore, that the speed of the train over it exceeded the rate specified by law, that fact does not conclusively show that the defendant was negligent in so running its train under the circumstances. In *Moore* v. *Maine Central R. R. Co.*, 106 Maine, 297, 304, this court said: "The running of a train faster than the statute permits is not negligence per se." It is competent evidence to be considered on the question whether in fact the defendant was negligent in running its train at a dangerous rate of speed at the time and place and under all the circumstances disclosed, but it is not conclusive.

We have already pointed out that the situation at the crossing was such that the traveler on the highway when at a safe distance from the crossing can see a train approaching from the direction of Norway. In further confirmation of that the conductor of this train testified that he was standing between the engine and tender looking ahead and that when the train was about 100 feet back from the crossing he saw the automobile "coming around the bend there" and that it "must have been two hundred fifty feet, and perhaps a little more" from the crossing. The engineer was in his seat looking towards the crossing and he first saw the automobile when it was "one hundred fifty feet to two hundred feet. I should judge" from the crossing. The brakeman stood on the pilot of the tender at the extreme head of the train, and he testified that the automobile was two hundred and fifty feet from the crossing when he first saw it. As showing that the rate of speed of the train was well within the estimate of the witnesses, and probably less than fifteen miles an hour, the brakeman, when he saw that the automobile did not stop

and would strike the tender near where he stood, jumped off on the other side, in about the middle of the street, and did not fall down. He said, "when I stepped off, I made one step. I let the train go by. I waited for the train to go by." Four other travelers on Pleasant street at the time and in the vicinity of the crossing testified that they heard the whistle of the train as it approached the crossing, and another heard the ringing of the bell, but did not remember hearing the whistle. That testimony confirms what has already been stated that the situation at this crossing is such that the warning signals of a train coming from Norway can be readily heard by travelers approaching the crossing.

After a careful examination and painstaking consideration of all the evidence, the court is of the opinion that there is no sufficient proof that would warrant a finding of negligence on the part of the defendant in the management or speed of its train at the time of the accident. Accordingly the entry must be,

*Judgment for defendant.*